AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  1:21-MJ-00265 |
| JON ALAN BADER | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __MAY 8, 2020__ in the county of __HAMILTON__ in the
__Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1001 | False Statements, Concealment |
| 18 U.S.C. § 1014 | False Statements in Loan or Credit Applications |
| 18 U.S.C. § 1040 | Fraud in connection with Major Disaster or Emergency Benefits |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Complainant's signature*

SA FERRON M. YI, FBI
*Printed name and title*

Sworn to before me and signed in my presence.
**via electronic means, specifically Facetime video.**

Date:  **Mar 30, 2021**

*Judge's signature*

City and state:   CINCINNATI, OHIO         HONORABLE STEPHANIE K. BOWMAN
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ferron M. Yi, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (hereafter "FBI") and have been since February 2020. I am currently assigned to the Complex Financial Crimes Squad of the Cincinnati Division. In this capacity, I investigate matters involving criminal enterprises, white collar crimes, civil rights violations, money laundering, and various types of fraud. Prior to my employment with the FBI, I served as a sworn peace officer in the State of Georgia for over 10 years. I have received training and investigative experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, electronic media and computer investigations, and various other crimes and investigative techniques including Title III investigations. As a FBI Special Agent, I am responsible for the investigation and enforcement of violations of United States law, including laws dealing with bank fraud, wire fraud, disaster fraud, and false statements.

2. I am familiar with the facts and circumstances of this case. The information contained in this affidavit is either personally known to me, based upon my interview of various witnesses and review of various records and publicly available information, or has been relayed to me by other agents or sworn law enforcement personnel. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning the investigation. I have only set forth facts to establish probable cause for the charges in the complaint.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C.

§ 1344 (Bank Fraud), 18 U.S.C. § 1040 (Fraud in connection with Major Disaster or Emergency Benefits), 18 U.S.C. § 1014 (False Statements in Loan and Credit Applications), and 18 U.S.C. § 1001 (False Statements, Concealment) among others have been committed by Jon Alan Bader.

## II. PROBABLE CAUSE

**A. The government is investigating fraud involving loan programs designed to assist small businesses during the pandemic.**

4. In approximately October 2020, the FBI initiated an investigation of Jon Alan Bader a/k/a Jon Bader (dob XX/XX/1970) (hereafter "Bader"), an independent contractor and the purported owner of JB Auto Wholesale, LLC, for suspected violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1014 (False Statements in Loan and Credit Applications) among other offenses based on a review of transactional data showing that deposits stemming from Small Business Administration (SBA) programs designed to assist small businesses and their employees during the coronavirus (hereafter "COVID-19") pandemic had been used for purchases and expenses seemingly unrelated to job retention and other permissible business expenses.

5. During a review of Bader's bank records, I discovered that Bader received two Automated Clearing House (hereafter "ACH") credits totaling approximately $104,900.00 in his First Financial Bank account ending in 7873, which is a personal checking account, comprising of a $103,900.00 deposit in this account from "SBAD TREAS 310 MISC PAY 291139800273000" on June 26, 2020, and a $1,000.00 deposit from "SBAD TREAS 310 MISC PAY EIDG: 3305436285" on July 07, 2020.

6. The investigation further revealed that these deposits stemmed from an Economic Injury Disaster Loan (hereafter "EIDL") as well as a $1,000 EIDL advance. Congress expanded the SBA's EIDL program under the Coronavirus Aid, Relief, and Economic Security (CARES)

Act, a federal law enacted on March 27, 2020, to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. Under the CARES Act, the SBA can directly issue EIDLs to provide economic relief to businesses that are currently experiencing a temporary loss of revenue due to COVID-19 by supplying working capital and normal operating expenses such as continuation of health care benefits, rent, utilities, and fixed debt payments. However, EIDL proceeds cannot be used for disbursements of dividends or bonuses or any disbursements to owners, partners, officers, directors, or stockholders, except when directly related to performance of services for the benefit of the company. EIDL proceeds also cannot be used to expand facilities or acquire fixed assets. Moreover, to the extent feasible, borrowers are required to purchase only American-made equipment and products with the proceeds of the EIDL. The amount of EIDL funds a business may receive is generally determined by the number of employees and amount of monthly expenses accrued in the previous year before the pandemic.

7. During the investigation, I also discovered that a month prior to applying for the EIDL, Bader applied for and received a loan for $20,800.00 under the Paycheck Protection Program (PPP). The SBA PPP was established under the CARES Act to provide monetary assistance for businesses to keep their workforce employed during the COVID-19 crisis. The SBA PPP allows entities to apply for low-interest private loans through participating federally insured financial institutions which are then guaranteed by the SBA. PPP loan proceeds may be used to cover payroll costs, rent, interest, and utilities. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and certify eligibility in order to obtain a PPP loan.

**B. Evidence suggests the EIDL and PPP loan applications contain false statements.**

8. On or about May 08, 2020, Bader electronically signed a PPP Borrower Application Form through First Financial Bank (FDIC-insured) certifying that he maintained 100 percent ownership of business TIN (EIN, SSN) XXX-XX-3955. In the application, he listed himself to be self-employed, operating under the DBA, Tradename or LLC of JB Auto Wholesale, with an average monthly payroll of $16,000.00. Bader checked boxes indicating that the PPP loan would be spent fully on payroll and not on "lease/mortgage interest," "utilities," or "other." He additionally certified that "[a]ll SBA loan proceeds w[ould] be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." He electronically initialed the following statement:

> The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

Bader requested a PPP loan amount of $40,000.00.

9. On May 13, 2020, First Financial Bank issued Business Loan Agreement (loan number 820892130) with a maturity date of May 12, 2022, for borrower "Jon Bader," for the principal amount of $20,800.00. This amount was directly deposited into Bader's First Financial Bank account ending in 7873.

10. According to the SBA Loan File, on or about June 19, 2020, Bader applied for an EIDL (SBA application number 3305436285) for company legal name "Jon Bader" and company DBA JB Auto Wholesale, listed as a sole proprietorship. On this application, Bader indicated that he was 100 percent owner of this sole proprietorship using Federal Tax Identification Number 27-6683955. Bader stated that his gross revenues for the 12 months prior

to the COVID-19 disaster was $210,000.00. In support of his application, Bader submitted IRS Form 1099-MISC[1] issued by International Auto Outlet, 2531 Dixie Highway, Hamilton, Ohio 45015, showing Bader received $199,654.47 in nonemployee compensation and as state income for the year 2019.

11. On or about June 24, 2020, Bader's SBA application number 3305436285 was funded for approximately $104,900.00; however, the SBA Loan File notes that there was no score on the credit report, a public records search did not find a business, and a bank account associated with the business could not be verified. Bader used "Docusign" to electronically sign the Loan Authorization and Agreement form with the SBA.

12. An open record review by your affiant revealed that registration of "Domestic for Profit LLC" for business JB Auto Wholesale, LLC, was filed by Bader electronically via LegalZoom with the Ohio Secretary of State and effective on June 30, 2020. Based on my training and experience, your affiant believes this may be indicative of fraud because in order to qualify for a PPP loan, small businesses must have been in operation as of February 15, 2020. Based on my training and experience, a significant source of fraud from SBA programs stems from newly-created businesses ineligible to receive such proceeds. Based on my investigation, there are no public records that indicate that JB Auto Wholesale, LLC was in operation in 2019. Moreover, Bader did not open a business bank account for JB Auto Wholesale, LLC until July 21, 2020 (First Financial Bank basic business checking account ending in 0088).

---

[1] This form is used to prepare and file an information return to report various types of income other than wages, salaries, and tips.

**C. Evidence suggests that Bader used PPP and EIDL loan proceeds for expenditures contrary to SBA program rules.**

13. A review of Bader's associated bank account records ending in 7873 show a series of transactions following receipt of SBA loan proceeds that do not appear to be related to legitimate business expenses or activity. Reviewing Bader's bank account records for the account ending in 7873, from approximately March 2019 to April 2020, prior to receiving the loan proceeds, Bader's normal monthly withdrawals ranged from approximately $1,000.00 to $12,000.00. However, Bader's bank records following receipt of the May 13, 2020 PPP loan proceeds show a significant increase in spending. Your affiant knows based on her training and experience that behavioral changes, including increased spending, are often "red flags" for fraud.

14. Specifically, bank records from May 13, 2020 to June 15, 2020 show that Bader made 120 withdrawals or transactions totaling approximately $16,133.70. Many of these expenses appear to be personal. For example, Bader made various purchases to food delivery and transportation services such as "Door Dash" and "Uber," purchases at various restaurants, including, but not limited to, Smoothie King, Kroger, Twin Peaks, Agave & Rye, Wendy's, Burger King, The Precinct, and Marx Hot Bagels, purchases at various department and retail stores including but not limited to Target, Auto Zone, and Walgreens, as well as purchases that appear to be for gas/travel in Indiana, Kentucky, and Florida. In addition, Bader appears to have transferred funds to Ameritrade presumably to an account held for his personal benefit.[2]

15. The bank statement following receipt of the EIDL proceeds also show significant personal expenditures. In the bank statement comprising the period of June 16, 2020 to July 13, 2020, Bader made 141 withdrawals or transactions totaling approximately $55,457.09, including purchases to food delivery and transportation services such as "Door Dash" and "Uber,"

---

[2] Bank records also show cash deposits from unknown sources as well as deposits from Ameritrade.

purchases at various restaurants including but not limited to, Smoothie King, Gulf Breeze Café, Longhorn Steakhouse, Dairy Queen, Jeff Ruby's and Starbucks, purchases at various department and retail stores including, but not limited to Puma, Lacoste, Saks and Saks off 5th, purchases for travel in Sarasota, Florida, and at the Cincinnati Airport, payments for lawn care services (presumably for his residence), and several transactions to Ameritrade.[3]

16. In the following statement, comprising dates of July 14, 2020 to August 10, 2020, Bader made 124 withdrawals or transactions totaling approximately of $67,499.46 (including deposits from Ameritrade) and made various purchases to food delivery and transportation services such as "Door Dash" and "Uber," purchases at various restaurants including but not limited to, Starbucks, Embers Restaurant, Kroger, McDonald's, and Goldstar, a payment to a KW for a "93 Mercedes"[4] in the amount of $12,000.00, and two "phone/in-person transfers" totaling $40,000.00.

17. In addition, from approximately May 13, 2020 to July 28, 2020, Bader wrote the following checks from the account ending in 7873:

    a. $13,416.66 on May 13, 2020 (cash);

    b. $3,500.00 on May 15, 2020 (cash);

    c. $1,132.00 on May 15, 2020 (International Auto Outlet);

    d. $3,000.00 on May 28, 2020 (cash);

    e. $1,666.67 on June 05, 2020 (cash);

    f. $18,654.17 on June 29, 2020 (cash);

    g. $8,500.00 on July 01, 2020 (cash);

    h. $8,000.00 on July 10, 2020 (cash);

---

[3] Bank records also show over $10,000 in deposits from unknown sources.
[4] Upon information and belief, Mercedes Benz only started manufacturing vehicles in the United States in 1995.

      i. $8,066.67 on July 10, 2020 (to an individual named SK); and

      j. $300.00 on July 28, 2020 (AMG Dental).

18. None of these checks appear consistent with payroll, rent, or other permitted expenses under the PPP and EIDL programs. Based on my training and experience, the numerous cash transactions also seem calculated to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the fraud.

19. A review of account records for the business checking account ending in 0088 also show that Bader wrote the following checks to himself between August and the end of October 2020:

      a. $2,500.00 on August 07, 2020;

      b. $5,000.00 on August 24, 2020;

      c. $10,000.00 on September 03, 2020;

      d. $8,000.00 on September 30, 2020;

      e. $25,000.00 on October 28, 2020 (counter withdrawal); and

      f. $15,000.00 on October 30, 2020.

**D. During an interview with agents, Bader admitted using SBA funds for personal expenses and failed to disclose receiving the $20,800 PPP loan.**

20. On January 20, 2021, a voluntary interview of Bader was conducted by FBI Special Agent Ferron Yi and FBI Special Agent Jeremy Overbay at the office of the FBI Cincinnati, located at 2012 Ronald Reagan Drive, Cincinnati, Ohio 45236, with his attorney, Robert Kelly (hereafter "Kelly"), present. Bader told agents that he was a self-employed 1099 contractor for International Auto Outlet where he bought and sold cars on behalf of the company. As a self-employed contractor, Bader stated that his income was wholly commission based and

most of his sales came from car auctions. Bader claimed that he applied for a PPP[5] in the amount of approximately $150,000.00 due to the auctions closing because of the COVID-19 pandemic and the uncertainty of when the auctions would reopen; however, according to Bader, he only received $103,900.00 toward the end of June. Notably, Bader did not disclose to agents that he had received a PPP loan for $20,800.00 from First Financial Bank in May.

21.     Bader claimed that his spending habits did not change once he received the PPP loan. Bader did, however, disclose that on multiple occasions he used PPP funds to travel to Sarasota, Florida to visit his father. Bader also disclosed that he used approximately $45,000 in "PPP" loan funds to purchase a 1993 Mercedes-Benz 300CE Coupe and a 1995 Mercedes-Benz E320 Convertible.[6] Bader claimed that both classic cars were being maintained in storage and he could potentially sell them in the Spring when the auction market reopened.

22.     Based on my training and experience, Bader misused SBA loan funds by making these purchases and expenditures.

---

[5] Throughout the interview, Bader referred to the loan as a PPP loan, however, he appears to be referencing the EIDL.
[6] It is unclear that either vehicle would have been manufactured in the United States.

## III. CONCLUSION

23. Based on the foregoing, I request that the Court issue the proposed criminal complaint. There is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1040 (Fraud in connection with Major Disaster or Emergency Benefits), 18 U.S.C. § 1014 (False Statements in Loan or Credit Applications), and 18 U.S.C.§ 1001 (False Statements) have been committed by Jon Alan Bader. I, therefore, respectfully request that an arrest warrant be issued authorizing the arrest of Jon Alan Bader.

Respectfully submitted,

_____
Ferron M. Yi
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this ___30___ day of March, 2021.
**via electronic means, specifically Facetime video.**

_Stephanie K. Bowman_
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE